[Patterson, et al. v. The State.]

# Patterson, *et al. v.* The State.

## *Murder.*

(Decided January 11, 1915. 67 South. 997.)

1. *Homicide; Instructions.*—Where the court charged that if defendants lay in wait for deceased, and killed him with a gun while lying in wait, they were guilty of murder in the first degree, such charge was proper, under section 7084, Code 1907, the term "lying in wait" meaning being in ambush for the purpose of murdering another.

2. *Appeal and Error; Harmless Error; Instructions.*—Where the refused instruction, although stating a correct principle of law, was substantially given in other written instructions, the error, if any, was harmless.

3. *Trial; Remarks of Court.*—It was within the court's proper function, following a question to a witness, to state that it looked like a man who had been a justice of the peace, ought to have sense enough to answer the questions asked; the statement being a reprimand addressed solely to the witness and not to the jury, and having no bearing upon witness's credibility.

4. *Witnesses; Impeachment.*—Where the report of the testimony of defendants in their examination before the coroner's jury, was taken down only in part, but the stenographer testified that what he had taken down was correctly reproduced, and defendants objected to the admission of the report because it did not contain all of the testimony, the stenographer's report as to those parts of the report which tended to contradict defendant's testimony at the trial was admissible, the defendants having been offered as witnesses in their own behalf, and been cross examined.

5. *Trial; Objection to Evidence; General.*—Where a part of the testimony taken by the stenographer in the inquiry before the coroner's jury was admissible for the purpose of impeaching, the whole was properly admitted over a general objection to its admission, since it was defendant's duty to separate by specific objections the inadmissible from the admissible.

APPEAL from Cullman Circuit Court.

Heard before Hon. A. H. ALSTON.

Clyde Patterson and others were convicted of murder in the first degree, and they appeal. Affirmed.

F. E. ST. JOHN, and CALLAHAN & HARRIS, for appellant.

R. C. BRICKELL, Attorney General, and T. H. SEAY, Assistant Attorney General, for the State.

McCLELLAN, J.—The appellants were adjudged guilty of the murder of Robert Miller, and are sentenced to imprisonment during their lives. Robert Miller and Rube Carter were shot to death, from a roadside, while traveling in a wagon. A clear case of assassination was made by the proof. The issue was whether appellants, father and son, were among the guilty agents. There was evidence which, if credited, supported the jury's finding. Able counsel appeared in their defense below and appear on this appeal, presenting in full brief the grounds upon which insistencies for reversible errors, are rested. In the order of their discussion by appellant's counsel in brief, we will treat in the opinion the asserted errors.

(1) At the instance of the prosecution the court gave the following special instruction to the jury: "I charge you, gentlemen of the jury, that if you believe from the evidence in this case, beyond a reasonable doubt, that the defendants were lying in wait for the deceased, Robert Miller, and killed him by shooting him with a gun while lying in wait, then they would be guilty of murder in the first degree."

This instruction was in accord with the pertinent language and legal effect of the statute (Code, § 7084), as well as with *Mitchell's Case*, 60 Ala. 28, 29.

According to Bouvier, "lying in wait" means "being in ambush for the purpose of murdering another." Such is the significance of the phrase, as employed in the quoted instruction.

(2) Appellants complain of the refusal of the court to give the jury this charge: "The court charges the jury that if the witness Mac Miller willfully and intentional-

ly swore falsely that he did not have the conversation with Dr. Baird, as testified to by Dr. Baird, then they may discard all the testimony of Mac Miller."

The substance of the just quoted request for instruction was sufficiently contained in the following charges given at the defendant's instance: "The court charges the jury that if they find from the evidence that Mac Miller has made contradictory statements as to material facts in this case or any of such facts, the jury may look to these contradictory statements in order to determine what credence they will give to the testimony of Mac Miller. * * *

"If the jury believe from the evidence that the witness Mac Miller swore willfully falsely in one particular, the jury are authorized to disregard the evidence of said Mac Miller. * * *

"If the witness Mac Miller has been impeached, then the jury may disregard the entire testimony of said Mac Miller, unless it be corroborated by other testimony not so impeached. * * * "

So, even assuming (for occasion only) that there was error in refusing the quoted request for instruction, it was without prejudice to the appellants.

(3, 4) On the cross-examination of defendants' witness W. H. Waldrop, following a simple question propounded to him, the bill recites this matter: "Thereupon the presiding judge stated to the witness in the presence of the jury, and while the witness was on the stand, that it looks like a man who had been a justice of the peace ought to have sense enough or intelligence enough to answer the questions asked."

The evident purpose was to reprimand the witness for a failure to answer the "questions asked," and to promote the orderly, prompt taking of the testimony on

the trial. The statement of court had no bearing or effect upon the credibility of the witness or upon the credence to be accorded or that might be accorded the testimony the witness had given or would thereafter give. The statement was addressed to the witness, not to the jury, and was within the court's function to control, within proper limits, the examination of witnesses. There was no error in the utterance of the quoted remarks to the witness. None of the cases cited on brief are authority for a contrary conclusion. After the defendants (appellants) had been cross-examined by the prosecution, during which examination each was asked questions touching his testimony before the coroner's jury, the prosecution offered in evidence the stenographic report made of their testimony on that occasion. It was shown by the testimony of the stenographer who made the report that he did not take down parts of what defendants stated before the coroner's jury, being directed by the state's representative to omit certain matters which he described. The stenographic report was shown to be a correct reproduction of what it purported to reproduce. The bill recites: "The defendants objected to the introduction of said testimony on the ground that all of said testimony was not taken down by the stenographer who took down said testimony before the coroner's jury."

This was the only objection made to the admission in evidence of the stenographic report. All others were thereby waived.

(5) It is manifest that at least parts of the stenographic report were relevant and admissible under the familiar rule for impeaching a witness by showing statements, previously made, contradictory of testimony he has given on the hearing or investigation in progress.

Those parts of the stenographic report which tended to contradict the testimony given by the defendants on the trial were admissible. The objection was addressed to the whole of the report offered. If any part of it was admissible, then the objection was due to be overruled.—*Hill v. State,* 146 Ala. 51, 41 South. 621; *Longmire v. State,* 130 Ala. 66, 30 South. 413. There was no duty on the court to separate the admissible parts of the report from the inadmissible. It was the obligation of the objector to point out in his objection the parts that were inadmissible. In support of the contention for error in this particular, appellants' counsel cite the following decisions delivered here: *Tharp v. State,* 15 Ala. 755, 756; *Horton v. State,* 53 Ala. 488, 495; *Magee v. Doe ex dem. Hallett,* 22 Ala. 699; *Gildersleeve v. Caraway,* 10 Ala. 260, 44 Am. Dec. 485. All of these decisions relate to previously given testimony of a witness who had since died. In such cases it is essential that the entire testimony of the deceased witness shall be proffered as evidence. The purpose there is the substitution of the attainable—the reproduction —for that which is made unattainable by the death of the witness. The rule there applicable has no application to circumstances here under review. No error appearing, the judgment must be affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and DE GRAFFENRIED, JJ., concur.